OPINION
This is an accelerated calendar appeal. Appellant, Dale N. Donato, appeals the judgment of the Domestic Relations Division of the Lake County Court of Common Pleas which divided the marital property between appellant and his former wife, appellee, Tammy L. Donato, in a divorce decree. Appellee has not filed an answer brief before this court. For the reasons that follow, we modify the judgment of the trial court and affirm the judgment as modified.
Appellant and appellee were married on February 2, 1991 and separated on August 9, 1993. No children were born of the marriage. Appellee filed a complaint for divorce on August 5, 1993 in the Domestic Relations Division of the Lake County Court of Common Pleas.
The cause was tried before a magistrate with both parties present and represented by counsel. The magistrate issued a report of her findings on October 18, 1995. Among those findings, the magistrate found that appellant had engaged in financial misconduct and recommended that appellee be compensated for that misconduct. The magistrate also found that appellant had an employee's benefit plan through his premarital employment with TRW, Inc., and that the plan increased in value during the marriage.[1] The magistrate recommended that appellant should be awarded his TRW *Page 3 
stock and savings plan and additional stock and interest on the TRW plan in the amount of $8,237 as separate property.
Appellant filed timely objections to the magistrate's report. A partial transcript of the hearing before the magistrate was also filed in the record. The trial court sustained appellant's objections and remanded the matter to the magistrate for additional findings on certain items, including clarification on the increased value of appellant's TRW stock plan.[2] In particular, the trial court wanted clarification as to whether the plan increases and loan payments were properly excluded from the marital property, or whether their exclusion was an oversight.
A supplemental magistrate's report was filed on November 26, 1996. Upon consideration, the magistrate found that the increase in value of the pension plan and the stock plan, and interest earned, together with the payment of the debts, should have been included as marital assets and not ordered directly to appellant. Thereafter, the magistrate valued appreciation in the pension plan at $8,237, appreciation of the TRW stock plan at $9,570 and TRW stock plan interest at $2,621.
On December 3, 1996, the trial court entered its judgment of divorce, indicating that it found the magistrate's report to be proper and that it adopted the report to "the *Page 4 
extent hereinafter indicated." The recommendations regarding the value of the TRW appreciation and interest were included exactly as indicated in the magistrate's supplemental report; however, the trial court altered the magistrate's finding of financial misconduct to some extent. The magistrate based her finding that financial misconduct occurred on three incidents: (1) appellant placed appellee's separate property in a storage unit when she went out of town for a weekend, deliberately damaging, misplacing, or otherwise concealing some of the property in the process; (2) appellant took cash advances from credit cards during the marriage in excess of $5,000 for which he could not account; and (3) appellant used over $4,300 in marital funds to pay off a loan against his premarital debt so as to enhance his personal property.
In the trial court's judgment entry, the court adopted the finding that financial misconduct had occurred, but referenced only the damaged and missing property as a result of the storage unit incident and the unaccounted cash advances. The use of marital funds to pay off appellant's premarital debt was not considered as financial misconduct, rather the trial court simply attributed to appellant an intangible asset of $4,393 due to the fact that appellant "retained the full benefit of his premarital loans having been paid during the marriage[.]" After considering these factors, the trial court ultimately ordered appellant to pay appellee a total of $6,066.50 in the divorce decree.
Appellant thereafter perfected a timely appeal of this judgment in this court. *Page 5 
However, while the appeal was pending, appellant filed a motion for relief from judgment pursuant to Civ.R. 60(A) or (B)(5), asserting that a clerical error occurred by determining that the "pension" and "stock plan" were different assets when, in fact, there was only one TRW pension and stock plan. This amounted to "double counting" of only one asset. Upon appellant's motion to this court, we remanded the case to the trial court for the purposes of addressing appellant's Civ.R. 60 motion.
The trial court held a hearing on the matter and accepted appellant's assertion that a double counting of sorts had occurred. The court determined that only one pension and stock savings plan with TRW existed, and determined that the plan appreciated in value during the marriage in the amount of $8,870.43. The trial court thereafter issued anunc pro tunc entry on August 15, 1997 which corrected this error. The remainder of the judgment was identical to the previous judgment, except that as a result of the correction, the final order only required appellant to pay appellee $1,598.21.
In his appeal before this court, appellant asserts four assignments of error:
 "[1.] The Court erred in finding the Defendant guilty of financial misconduct.
 "[2.] The court erred in the manner in which it assessed a penalty for financial misconduct.
 "[3.] [T]he court erred in finding that passive appreciation of Defendant's stock plan interest was marital property.
 "[4.] The Court erred and abused its discretion in adopting findings of fact and conclusions of law unsupported *Page 6 
by the report of the Referee [Magistrate]."
Initially, we note that R.C. 3105.171 controls the distribution of property at the termination of a marriage. A court must determine whether property is marital property or separate property owned by one of the spouses. R.C. 3105.171(B);Babka v. Babka (1992), 83 Ohio App.3d 428, 432. After the court determines the status of the property, it must make an equitable distribution of that property. Id. In fashioning an equitable division of marital property, a trial court enjoys broad discretion. Cherry v. Cherry (1981),66 Ohio St.2d 348, paragraph two of the syllabus;Babka at 432. A reviewing court will not reverse the trial court's judgment absent an abuse of discretion. For an abuse of discretion to exist, the court's attitude must be unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
We also note that we are unable to address appellant's assertions which challenge the factual basis of the findings and recommendations of the magistrate which were ultimately adopted by the trial court. Pursuant to Civ.R. 53(E)(3)(b), it was appellant's duty to support his objections to the magistrate's findings with the relevant portions of the transcript of the hearing so that the trial court could independently consider the factual basis for the magistrate's conclusions. However, appellant submitted only a partial transcript with only a few very short excerpts of testimony given by the parties *Page 7 
during the hearing before the magistrate.[3] Moreover, the partial transcript was not properly certified. Thus, the trial court had no reason to doubt the factual findings of the magistrate and could adopt them outright to the extent indicated. We, likewise, have no record which indicates that the trial court abused its discretion in adopting the factual findings of the magistrate under those circumstances. To the extent that appellant now challenges those findings, the failure to provide to the trial court a full transcript, or at least a transcript which addressed the relevant issues, was fatal.
In the first assignment of error, appellant takes issue with the trial court's finding that appellant committed financial misconduct. Specifically, appellant argues that the trial court erred as a matter of law by: (1) finding that damage to separate property could be considered financial misconduct; (2) determining that the use of marital funds to pay premarital debts amounted to financial misconduct; (3) determining that appellant's inability to account for the cash withdrawals amounted to financial misconduct when there was no finding of wrongdoing or that the withdrawals occurred while the divorce was pending.
None of appellant's arguments have merit. R.C. 3105.171(E)(3) provides: "If a *Page 8 
spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."
First, appellant has cited no relevant legal authority for his theory that R.C. 3105.171(E)(3) does not apply when one spouse damages the separate property of the other spouse, as opposed to damaging marital property. The text of the financial misconduct statute makes no such distinction. In fact, this court has upheld the application of the statute when one spouse hid and did not return the separate property of another spouse. See Cottage v. Cottage (June 13, 1997), Trumbull App. No. 96-T-5412, unreported, 1997 Ohio App. LEXIS 2592.
Thus, where the trial court adopted the magistrate's finding that appellant improperly gathered appellee's possessions and locked them in a storage unit, intentionally damaging, removing, or otherwise losing some of her property in the process, a finding of financial misconduct will be upheld.
Second, contrary to appellant's assertions in his brief, the trial court did not determine that appellant's use of marital funds to pay his personal premarital debts amounted to financial misconduct. The trial court did not reference this factor in the section of the judgment entry dealing with financial misconduct. The trial court referenced this factor in another section of the judgment entry by simply attributing an *Page 9 
intangible asset to appellant to reflect the benefit he received by using marital funds to pay off his personal debt. Thus, although the magistrate may have based her finding of financial misconduct, in part, on this factor, the trial court did not. As a result, appellant's argument is not supported by the judgment entry.[4]
However, in reference to this regard, we note that an obvious error inadvertently occurred when the trial court applied the magistrate's findings. In the trial court's ninth finding, it determined that the husband had retained the full benefit of his premarital loans having been paid during the marriage in the amount of $4,393. In reference to that, the magistrate had initially made a finding that there had been a loan made to the husband on June 30, 1993, for a pay-off of his premarital credit card debt, and that $4,393 of the loan was paid off during their marriage.
It was uncontroverted that the parties separated on August 9, 1993. That means that the loan was taken out only one month or so before the separation, and the magistrate determined that the "Husband's withdrawal of marital funds in the amount of over $5,000.00 cash withdrawals for which he could not account as well as over $4,300.00 in marital funds paid on a loan against his premarital debt to enhance his personal property all amounts to financial misconduct." *Page 10 
As previously indicated, the trial court did not apparently adopt the finding of misconduct in reference to the loan although it did adopt it in reference to the missing jewelry, the damaged and missing property, and one-half of the unaccounted cash. That being the case, we do not see any additional facts which would justify the court's assessment of one hundred percent of the repayment to the husband.
Thus, just as the court only assessed one-half of the value of the unaccounted cash against the husband because it was derived from marital property, here the court should also have only assessed one-half of the value of the $4,393 repayment. Half of that would be $2,196.50. Added to his tangible assets, this would give appellant a net asset of $3,072.93. When that is subtracted from appellee's net assets, there is a discrepancy of $9,890.07. This ultimately brings the amount that appellant has to pay to appellee down from $1,598.21 to $499.96.
Finally, the trial court did not abuse its discretion in basing its finding of financial misconduct, in part, on the fact that appellant was unable to account for cash advances in excess of $5,000 which he admitted were taken during the course of the marriage.[5] To the extent that appellant is challenging the factual basis of the magistrate's finding adopted by the trial court, particularly in regards to whether wrongdoing occurred, we are unable to address this factual issue due to the incomplete transcript. On this point, *Page 11 
we would simply indicate that this court and other appellate courts have routinely held that the unilateral dissipation of marital assets can be grounds for financial misconduct. See Kelly v. Kelly (Mar. 24, 1995), Ashtabula App. No. 93-A-1834, unreported, 1995 Ohio App. LEXIS 1097;Babka at 435-436.
Of course, as appellant indicated, the timing of the dissipation is generally a relevant factor as dissipation prompted by divorce generally gives rise to an inference of wrongdoing. See Hammond v. Brown (Sept. 14, 1995), Cuyahoga App. No. 67268, unreported, 1995 Ohio App. LEXIS 3975. However, every factual scenario is different. We cannot say as a matter of law that the trial court erred in the case at bar by adopting a finding that the unilateral dissipation of marital funds, whichoccurred during the marriage and prior to separation, constituted financial misconduct, particularly in a marriage as short as this one. Moreover, there may have been facts available in the missing portion of the record which lend additional support to this finding. Appellant's first assignment of error is without merit, except to the very limited extent indicated herein.
In the second assignment of error, appellant takes issue with the manner in which the trial court compensated appellee for appellant's financial misconduct. Appellant argues that the trial court awarded punitive damages to appellee by granting her the replacement value of the damaged and missing items as a result of the storage unit incident, rather than the proper valuation of fair market value. This argument is *Page 12 
meritless as the magistrate clearly indicated that the values assigned in this regard were derived from the fair market value, not thereplacement value. These values were adopted in their entirety by the trial court. Again, appellant's argument is not supported by the available record, and we need not analyze the underlying legal debate. Appellant's second assignment of error is without merit.[6]
In the third assignment of error, appellant contends that the trial court erred by finding that the passive appreciation of appellant's TRW stock plan and interest was marital property. He asserts that as the magistrate determined that the TRW stock plan itself was separate property, the magistrate must make a finding that active rather than passive appreciation took place in order to designate the appreciation as marital rather than separate property pursuant to R.C.3105.171(A)(3)(a)(iii). Under this provision, marital property includes "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." Conversely, if the appreciation and income are not due to "the labor, monetary, or in-kind contribution of either or both of the spouses," the appreciation and income are considered passive, and, thus, the separate property of one spouse. See R.C. 3105.171(A)(6)(a)(iii) and (A)(4). *Page 13 
It is true that the magistrate did not make an express finding that the appreciation and income from the TRW plan was the result of "the labor, monetary, or in kind contribution" of either appellant or both parties. The magistrate did find, however, in her supplemental report that the income and appreciation from the TRW plan were marital property. This finding was made in response to the trial court's specific request for clarification on this point. Presumably the magistrate made this finding because there was some evidence in the record that a contribution was made to the plan by either appellant or appellee during the course of the marriage. Again, there was no transcript before the trial court to support appellant's position that not a "smidgen" of evidence exists to demonstrate such a contribution. Thus, we cannot say that the trial court abused its discretion by adopting the magistrate's finding that the income and appreciation were marital property.
In any event, the record reveals that appellant failed to object to the magistrate's finding in the supplemental report that the income and appreciation were marital property. Accordingly, he is now precluded from challenging this finding on appeal. See Civ.R. 53(E)(3)(b) stating that: "A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." We acknowledge that an identical finding by a magistrate in a supplemental report might not require a new objection if a previous objection had been properly raised; however, the instant finding *Page 14 
was a new and different finding from those in the original report. Thus, a new objection was required. Appellant's third assignment of error is not well-taken.
In appellant's fourth and final assignment of error, appellant asserts that the trial court abused its discretion by adopting the magistrate's finding which "double counted" the TRW stock plan. As the trial court has since corrected this error in the August 15, 1997 nunc pro tunc
entry, this argument is moot. Appellant also again argues that the trial court abused its discretion by adopting the magistrate's finding that the appreciation and interest from the TRW stock plan were marital property. As indicated in the third assignment of error, this argument is without merit. Appellant's fourth assignment of error is meritless.
In light of the foregoing analysis, appellant's four assignments of error are not well-taken, except to the very limited extent indicated. The judgment of the trial court is hereby modified and affirmed as modified, in that appellant is obligated to pay appellee the sum of $499.96, instead of $1,598.21.
NADER, J., O'NEILL, J., concur.
[1] The report indicated that appellant testified to a net gain of $12,191 in the TRW stock plan during the marriage, an increase in value by $9,570 and additional interest of $2,621. However, appellant also testified that over $4,000 was paid on the loan principal on this asset and $393 on interest on the loan, both during the marriage. Appellant stated that he took out an $11,000 loan to pay off his credit card debts that had accumulated prior to the marriage.
[2] In so doing, the trial court noted the discrepancy between the increased value as per appellant's testimony ($9,570 plus $2,621) and the value ultimately assigned by the magistrate ($8,237).
[3] We also note that these few excerpts do not address the issues raised in this appeal. One segment of the partial transcript deals with appellee's testimony as to the value of her teaching degree, earned in part, during the marriage. This is not an issue in the appeal. The other segment deals with appellant's testimony as to a certain credit card debt. The passage is very short and does not clearly explain what is at issue. We do not see any relevance to the instant appeal. Finally, the partial transcript includes appellant's counsel's closing arguments. It is axiomatic that closing arguments may not be considered as evidence.
[4] Indeed, appellant raised this very same argument in his objections to the magistrate's report, and it would appear that the trial court sustained the objection on this point, especially considering that the trial court indicated it adopted the magistrate's findings "to the extent hereinafter indicated."
[5] The magistrate's report indicates that the cash advances were taken before the parties separated on August 9, 1993, and that one advance of $2,200 was taken in May 1992. The magistrate did not indicate when the advance in excess of $5,000 was taken, other than during the course of the marriage.
[6] Appellant again contends that the trial court improperly punished him for paying his premarital debts with marital funds. We have indicated that the trial court did not base its determination of financial misconduct on this factor; thus, appellant's arguments in this regard are not well-taken.